IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America ex rel.<br>   EMMITT PERINE,<br><br>                               Petitioner,<br><br>v.<br><br>RICK HARRINGTON, Warden<br>   Menard Correctional Center,<br><br>                               Respondent. | No. 13 C 2649<br><br>Hon. Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Petitioner Emmitt Perine brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is incarcerated at the Menard Correctional Center in Menard, Illinois, where he is in the custody of Rick Harrington, the warden of that facility. A jury convicted him on two counts of criminal sexual assault on October 27, 2004. (Dkt. No. 21-3 at 8.) He is currently serving a natural life sentence. (Dkt. No. 21-2 at p. 2.) For the following reasons, the State's Motion to Dismiss Perine's Petition for a Writ of Habeas Corpus is granted.

## STATEMENT OF FACTS

Emmitt Perine was convicted of two counts of criminal sexual assault and sentenced to life in prison on March 24, 2005. (Dkt. No. 21-3 at p. 8.) At trial, the prosecution offered testimony from the victim, A.W., who was a fifteen-year-old high school freshman in 2002. (Dkt. No. 21-1 at p. 2.) A.W. testified that Perine approached her in April 2002 when she got off the bus in downtown Chicago. (*Id.* at p. 1.) Perine told A.W. he approached her because she "had a nice walk" and because she "could be a model." (*Id.*) Perine offered her modeling information, and A.W. followed Perine to the third floor of a building, where he took her body

1

measurements. (*Id.*) While measuring A.W., he touched her breasts, lifted her skirt, and commented that she had a "nice behind." (*Id.*) Perine also noted A.W.'s dry skin, and took out some lotion and rubbed it on her body. (*Id.* at 3.) Perine told A.W. to "turn around and bend over the stairwell" with her hands and knees on the stairs, where he pulled down her underwear and put his fingers into her vagina. (*Id.* at p. 4.) He then put his penis into her vagina, and then into her anus. (*Id.*) When A.W. told Perine she had to leave, he told her to come back later that day. (*Id.*) Even though A.W. complied with Perine's commands, she testified that she did not say anything at all because she was afraid he might kill her if she screamed for help. (*Id.* at p. 4.) A.W. eventually reported this incident to her psychiatrist, who told A.W.'s mother. (Dkt. No. 21-2 at p. 6.) A.W.'s mother reported the incident to the police. (Dkt. No. 21-1 at p. 4.)

The prosecution also offered (and the trial court permitted) testimony of nineteen-year-old A.D. as evidence of Perine's prior conduct. Perine approached A.D. on De Paul's loop campus in May 2002 (one month after the incident with A.W.) and asked if she was interested in modeling. (Dkt. No. 21-1 at p. 4.) When A.D. told Perine she was not interested in modeling, Perine offered her information on a college scholarship. (*Id.*) When A.D. told Perine that she might be interested, he led her to an empty classroom on campus, where he took out a tape measure to take her measurements "for a dress," which Perine told her was because she needed to host a dinner party in order to receive the scholarship. (*Id.* at p. 5.) While he measured her, Perine fondled A.D.'s breasts, pulled down her jeans, and then rubbed lotion on her body. (*Id.*) A.D. testified that she was alarmed and uncomfortable, so she left, and she reported the event to the police. (*Id.*)

Twenty-one-year old, T.M., also testified at trial. Perine approached T.M. in June 2002 (two months after the incident with A.W.) and asked her if she was interested in being a model

because she "looked like model." (Dkt. No. 21-1 at p. 5.) When T.M. met Perine the next day for a modeling audition, Perine led her to an empty classroom and took her measurements with his tape measure. (*Id.* at p. 6.) While measuring her, Perine squeezed her breasts, and T.M. became uncomfortable. (*Id.*) T.M. asked for a flier of information on the modeling job, and after she did not receive one, she left the classroom. (*Id.*) Upon leaving, she asked the security guard if he knew about the modeling "auditions" on campus. (*Id.*) When the security guard stated he did not know anything about modeling auditions, T.M. pointed Perine out to a security guard, who detained Perine for trespassing and turned him over to police custody. (*Id.*)

The trial court also allowed testimony from P.H., the victim involved in a 1987 criminal sexual assault case to which Perine pled guilty. (Dkt. No. 21-2 at p. 9.) P.H. testified that in 1987, she was twenty-six years old, and she had known Perine from work for about one year. (Dkt. No. 21-1 at p. 7.) P.H. also testified that she ran into Perine outside a store on State Street, and Perine invited her to a conference reception. (*Id.*) Perine led P.H. to an empty conference room where they shared a few drinks of champagne. (*Id.* at p. 10.) P.H. testified that when she told Perine she had to leave, he knocked her out of her chair and onto the floor, where Perine proceeded to hit her several times and put his elbow against her throat as he beat and suffocated her. (Dkt. No. 21-2 at p. 10 (citations to the trial record omitted).) Perine then removed her clothes, performed oral sex on her, and vaginally penetrated her. (*Id.*)

On October 27, 2004, a jury convicted Perine of two counts of criminal sexual assault. (Dkt. No. 21-3 at p. 7.) Perine filed a timely appeal with the Appellate Court of Illinois on April 13, 2005. (Dkt. No. 21-3 at p. 8.) Perine raised two issues on appeal: (1) the trial court failed to prove that he "committed an act of sexual penetration by the use of force or threat of force," and (2) the trial court erred by allowing proof of other crimes to show Perine's propensity to commit

crime because the 1987 incident was not similar enough, and such evidence was prejudicial. (Dkt. No. 21-1 at pp. 8, 12.) The Appellate court affirmed the jury's verdict on September 28, 2007. (*Id.* at p. 2.) Specifically, the Illinois Appellate Court rejected both of Perine's claims, finding that although A.W. did not cry out for help, the evidence showed her lack of consent. (*Id.* at p. 11.) Dismissing Perine's first argument, the court found that "the evidence this case clearly demonstrates that defendant acted against A.W.'s will." (*Id.*) Addressing Perine's second issue, the court agreed that the 1987 incident was not similar enough to the instant offense because it was over fifteen years earlier and involved a complainant that was twenty-six years old and knew the Perine from work. Thus, the Appellate Court found it was an error to admit such testimony against the Perine at trial. (*Id.* at pp. 14–15.) Nevertheless, the court affirmed Perine's conviction because found reversal "unnecessary [because] the evidence of defendant's guilt was clear." (*Id.* at p. 15.) On October 17, 2007, Perine filed a petition for rehearing, which was denied on November 16, 2007. (*Id.*; Dkt. No. 21-2 at p. 56.) The appellate court issued a modified order on November 21, 2007, changing the language in its prior order to add the word "potential" when discussing the prejudice Perine may have endured when the trial court erroneously admitted testimony about the 1987 incident into evidence at his trial. (Dkt. No. 21-2 at pp. 24–25.)

Perine filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court of Illinois, which the Supreme Court denied on March 26, 2008. (Dkt. No. 21-3 at p. 1.) He raised two issues in his petition: (1) the appellate court mistakenly substituted complainant's lack of consent for evidence of defendant's use of force or threat of force, and such holding was unsupported by law; and (2) the appellate court erred by affirming the trial court's decision to allow proof of other crimes evidence, which was improper, but did not warrant reversal and

remand. (Dkt. No. 21-2 at p. 3). The court summarily dismissed Perine's claims. (Dkt. No. 21-3 at p. 1.) Perine filed the present habeas petition on June 3, 2013[1] and presents three claims:

1. The trial court abused its discretion by admitting testimonial evidence from a 1987 aggravated criminal sexual assault to which Perine pleaded guilty;

2. The prosecution used the complainant's victim's perjured testimony to obtain a conviction; and

3. He received ineffective assistance of counsel when counsel failed to obtain or use victim's mental health records at trial.

(Dkt. No. 9 at p. 2-14.)

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs petitions for writs of habeas corpus filed after April 24, 1996. *Benefiel v. Davis,* 357 F.3d 655, 659 (7th Cir. 2004). Under the AEDPA, a federal district court may issue a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). For claims adjudicated on the merits in state court proceedings, the district court may issue a writ of habeas corpus only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Cheeks v. Gaetz,* 571 F.3d 680, 684 (7th Cir. 2009).

---

[1] On April 30, 2013, Perine filed his initial habeas petition, and the court dismissed it without prejudice. Perine was allowed to refile a petition within 30 days. Perine filed the present petition on June 3, 2013. (Dkt. No. 9 at p. 1.)

## I. Perine's petition is untimely.

### A. Statute of Limitations

Under the AEDPA, a state prisoner has one year to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The statutory period runs from the latest of: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. *Id.* A properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment of claim, however, tolls the limitations period. 28 U.S.C. § 2244(d)(2); *Obriecht v. Foster,* 727 F.3d 744, 748 (7th Cir. 2013).

Perine had ninety days after the entry of judgment, which took place on March 26, 2008, to file a petition for certiorari. Sup. Ct. R. 13.1. Perine did not file a petition for writ of certiorari to the United States Supreme Court, and his conviction therefore became final at the end of that 90-day period, on June 26, 2008. 28 U.S.C. § 2244(d)(1)(A); s*ee Jones v. Hulick,* 449 F.3d 784, 787-88 (7th Cir. 2006) (holding that the conviction became final "the day when the time to file a petition for certiorari to the United States Supreme Court expired.") Therefore, Perine's one-year limitation period commenced on the date of final judgment, June 26, 2008, and it expired on June 26, 2009. Any habeas petition filed by Perine after June 26,

2009 is untimely. It follows that Perine's habeas petition, initially filed on April 9, 2013, and refiled as amended on June 3, 2013, is unquestionably untimely. Perine does not dispute the tardiness of the filing; instead, he petitions this court to toll the one-year statute of limitations.

### B. Equitable Tolling

Perine argues that he is entitled to equitable tolling because prison lockdowns prevented him from filing the petition and constitute extraordinary circumstances beyond his control. (Dkt. No. 9 at pp. 3–7.) A court may equitably toll the limitations period if a petitioner can show that he has pursued his rights diligently and that some extraordinary circumstance beyond his control stood in the way of a timely filing. *See Jones v. Hulick,* 449 F.3d 784, 789 (7th Cir. 2006) ("Equitable tolling excuses an untimely filing when, despite exercising reasonable diligence, a petitioner could not have learned the information he needed in order to file on time.") However, equitable tolling is "an exceptional remedy" to habeas petitioners who have the burden of proving that the remedy applies. *Taylor v. Michael*, 724 F.3d 806, 810 (7th Cir. 2013).

Here, Perine has not shown that he diligently pursued his rights. His conviction became final on June 26, 2008, and he waited nearly five years to file his petition in this Court. (Dkt. No. 21 at 2.) Additionally, Perine's only evidence of extraordinary circumstances is that he was subjected to prison lockdowns and a lack of access to a law library from 2010 to 2013. (Dkt. No. 9 at p. 3-7.) This argument fails for two reasons. First, courts have long held that such circumstances do not warrant equitable tolling. *See Jones*, 449 F.3d at 789; s*ee also Estremera v. U.S.*, 724 F.3d 773, 777 (7th Cir. 2013) (finding that a lack of library access justified granting a petitioner more time to file a collateral attack under 8 U.S.C. 2255(f)(2), but that the lack of library access still did not justify common law equitable tolling); *Tucker v. Kingston*, 538 F.3d

7

732, 735 (7th Cir. 2008) (finding that the lack of library access still did not justify common law equitable tolling); *Jackson v. Rednour*, 2011 WL 5980984, *2 (N.D. Ill. Nov. 28, 2011); *United States ex rel. Taylor v. Ryker*, 2007 WL 1280630, *4 (N.D. Ill. Apr. 26, 2007); *United States ex rel. Ford v. Page*, 132 F. Supp. 2d 1112, 1116 (N.D. Ill. 2001) ("[T]he fact that a prison was sometimes on lock-down, preventing access to the prison law library, does not establish "extraordinary circumstances" justifying equitable tolling."); *United States ex rel. Morgan v. Gilmore*, 26 F. Supp. 2d 1035, 1039 (N.D. Ill. 1998). Second, to be timely, Perine needed to file his habeas petition by June 25, 2009, and he does not argue or present any evidence that he was in any way prevented from pursuing his petition during the year before that date—the prison was not locked down for five full years. Perine's justification for his prolonged delay therefore does not support the application of equitable tolling.

### C. Actual Innocence

Additionally, Perine failed to show that a fundamental miscarriage of justice would occur if this Court does not hear his claim. A court may excuse a petitioner's delay in filing a habeas corpus petition when new evidence of actual innocence is presented as an exception to the AEPDA statute of limitations. *McQuiggin v. Perkins*, —— U.S. ——, ——, 133 S. Ct. 1924, 1935 (2013). This exception exists to prevent a miscarriage of justice and "seek[s] to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Id.* (citing *Schlup v. Delo,* 513 U.S. 298, 324 (1995)). Before applying this exception, the court must find that the petitioner demonstrated that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* (citing *Schlup*, 513 U.S. at 327); *see also Morales v. Johnson,* 659 F.3d 588, 605 (7th Cir. 2011). Further, an "[u]nexplained delay in presenting new

8

evidence bears on the determination whether the petitioner has made the requisite showing." *McQuiggin*, 133 S. Ct. at 1935. Thus, tardiness does not warrant instant dismissal, but instead bears on the "credibility of evidence proffered to show actual innocence." *Id.* at 1936.

Here, the extent of Perine's actual innocence argument is that "the alleged incident [of sexual assault] never happen[ed. Because] this was a good chance for the plaintiff to lie out of it." (Dkt. No. 9 at p. 10.) Perine contends that if he had the victim's medical records from her psychiatrist, he would have been able to show that complainant was a "pathological liar" and habitual truant, Which, as the Court understands his argument, shown that he is actually innocent. (*Id.*) But Perine's claim of actual innocence fails for several reasons. First, evidence of A.W.'s mental health is not sufficient to show that a reasonable juror would not have convicted Perine for criminal sexual assault had it been presented at trial, particularly because her testimony was corroborated by testimony given by other witnesses who stated Perine used the same luring tactics on them in similar situations. *See McQuiggin*, 133 S. Ct. at 1936. Further, had Perine obtained the evidence and tried to introduce it at trial, it might have been excluded as privileged or irrelevant. *See* 740 ILCS § 110/3 (notes taken by a therapist are presumptively confidential and not discoverable); *People v. Printy*, 598 N.E.2d 346, 353 (Ill. App. Ct. 1992) (court may admit witness's health records after determining they are relevant following an *in camera* review (citing *People v. Bean*, 560 N.E.2d 258, 270 (Ill. 1990)). Moreover, Perine's delay in presenting this issue reduces the very credibility of claim of actual innocence. *McQuiggin*, 133 S. Ct. at 1935. Therefore, Perine's actual innocence argument fails because Perine has not demonstrated that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.*; *see also Morales v. Johnson,* 659 F.3d 588, 605 (7th Cir. 2011). The Court therefore dismisses his habeas petition.

## II. Certificate of appealability is denied.

Unless this Court issues a certificate of appealability, an appeal may not be taken to the United States Court of Appeals from this Court's judgment in a habeas proceeding. *See* 28 U.S.C. § 2253(c); *see also Bolton v. Akpore*, 730 F.3d 685, 697 (7th Cir. 2013). The decision of whether or not to grant a certificate of appealability is a screening device used to conserve judicial resources and prevent the Courts of Appeals from being overly burdened with unmeritorious habeas corpus petitions. *See Ouska v. Cahill-Masching*, 246 F.3d 1036, 1046 (7th Cir. 2001). Courts may only grant a certificate of appealability when the petitioner has presented "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Gonzalez v. Thaler*, 132 S. Ct. 641, 649 (2012).

When a court dismisses a petition on procedural grounds, a certificate of appealability "should [be] issue[d] when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 476, 485 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* at 484. Here, Perine's claims are dismissed on procedural grounds because he failed to file his petition within one year of his conviction becoming final, and no reasonable jurist could conclude otherwise and allow him to proceed. The Court therefore denies him a certificate of appealability for the claims raised in his habeas petition. *See* 28 U.S.C. § 2253(c)(2); *see also Gonzalez*, 132 S. Ct. at 649.

## CONCLUSION

For the reasons set forth above, the Court grants the State's Motion to Dismiss Perine's Petition for a Writ of Habeas Corpus and denies Perine a certificate of appealability.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 19, 2014